IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:11-CV-58-JG

| | | |
|---|---|---|
| DAVID LEE OVERSTREET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, which is before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) (D.E. 34), plaintiff David Lee Overstreet ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 35, 41). Both parties filed memoranda in support of their respective motions (D.E. 37, 42). For the reasons set forth below, the Commissioner's motion will be allowed, plaintiff's motion will be denied, and the final decision of the Commissioner will be affirmed.

I.      BACKGROUND

A.      Case History

Plaintiff filed applications for DIB and SSI on 24 August 2007, alleging a disability onset date of 4 June 2007. Transcript of Proceedings ("Tr.") 9. The application was denied initially

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

and upon reconsideration, and a request for hearing was timely filed. Tr. 9, 59-62, 92-94. On 9 February 2010, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 25-58. In a written decision dated 15 April 2010, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 9-20. Plaintiff timely requested review by the Appeals Council. Tr. 251. The Appeals Council admitted additional evidence submitted by plaintiff, but denied the request for review on 10 February 2011. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 14 April 2011, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 3)).

### B. Standards for Disability

#### 1. Five-Step Analysis

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523,

416.923.  If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1523, 416.923.

### 2.  Materiality of Drug Addiction or Alcoholism

If under this analysis a claimant is found to be disabled and there is medical evidence that the claimant has drug addiction or alcoholism ("DAA"), an additional determination is required—namely, whether such substance abuse is a contributing factor material to the determination of disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  If the substance abuse is found to be material, the claimant cannot be considered disabled under the Act.  *See* 42 U.S.C.A. §§ 423(d)(2)(C), 1382c(a)(3)(J) (providing that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled").  The burden of proving that the drug addiction or alcoholism is not material falls on the claimant.  *Bridgeman v. Astrue*, No. 4:07-CV-81-D, 2008 WL 1803619, at *3 (E.D.N.C. 21 Apr. 2008) (citing *Sanders v. Apfel*, No. 3:00-CV-296-H, 2001 WL 114360, at *6 (W.D.N.C. 26 Jan. 2001)); *see also Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (holding that a claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability).

The key factor examined in making the materiality determination on drug addiction or alcoholism is whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).  To make this determination, an evaluation is made regarding which of the physical and mental limitations that the claimant has when using drugs or alcohol would remain if he stopped such use and then whether any of the remaining limitations would be disabling.  *Id.* §§ 404.1535(b)(1), 416.935(b)(1).  If the remaining limitations are found

4

not disabling, the claimant's substance abuse is deemed a contributing factor material to the determination of disability, and the claimant is determined to be not disabled. *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). On the other hand, if the remaining limitations are found to be disabling, the substance abuse is deemed not to be material, and the claimant is deemed disabled. *Id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

In cases where, as here, substance abuse disorders coexist with other mental impairments, the Social Security Administration ("SSA") recognizes that it can be difficult to disentangle the mental limitations imposed by the substance use disorder and those resulting from other mental impairments. *See* Questions and Answers Concerning DAA from 2 July 1996 Teleconference, No.EM-96200, https://secure.ssa.gov/apps10/public/reference.nsf/links/04292003041931PM, Ques. 29 (SSA 30 Aug. 1996) (last visited 20 Sep. 2012). According to SSA policy, the evidence "most useful" to distinguishing between the limitations imposed by drug addiction and alcoholism and the limitations from other impairments is that relating to a period when the individual is not using drugs or alcohol. *Id.* Ans. to Ques. 29. If it is not possible to separate the limitations imposed by the substance abuse from those resulting from the other mental impairments, SSA policy is that the substance abuse should be found not to be a contributing factor material to the disability determination. *Id.*

C.      **Findings of the ALJ**

Plaintiff was 36 years old on the alleged onset date of disability and 39 years old on the date of the administrative hearing. Tr. 17 ¶ 8. Plaintiff completed ninth grade, and his past work experience includes jobs as a trash collector, grounds keeper, and construction worker. Tr. 17 ¶ 8; 31, 32.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 12 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which are severe within the meaning of the Regulations: depression, bipolar disorder, and substance abuse. Tr. 12 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, including his substance abuse disorder, met listings 12.04 (affective disorders) and 12.09 (substance addiction disorders) through 2007, when he was using alcohol and cocaine regularly.[1] Tr. 12 ¶ 4; 13 ¶¶ 5, 6. Listing 12.04 is met if an individual meets both the A and B criteria or C criteria. The B criteria are met by having at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[2] *See* Listings 12.04B; *see also* Listing 12.00C (assessment of severity). Listing 12.09 is met when there are behavioral or physical changes associated with the regular use of substances that affect the central nervous system and any one of various specified listings is met, including the other applicable listing here, Listing 12.04.

---

[1] Although the overwhelming focus of the evidence of plaintiff's substance abuse (aside from alcohol abuse) is on marijuana, as the ALJ's summaries of the evidence indicate, the record appears to contain substantial evidence that he also used cocaine. *See* Tr. 575. Specifically, plaintiff reported during a psychiatric evaluation on 14 August 2009 at the Carter Clinic that with respect to cocaine he "smoked his 'paycheck every Friday.'" Tr. 575. The ALJ referred to this record in his decision. Tr. 16 ¶ 7. Plaintiff does not specifically challenge the ALJ's findings regarding his use of cocaine or marijuana.

[2] For the first three functional areas, the ratings in order of increasing level of limitation are none, mild, moderate, marked, and extreme. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). In the last area, "repeated episodes of decompensation, each of extended duration" means three episodes within one year or an average of one every four months, each lasting at least two weeks. Listing 12.00C.4.

In addition to finding that plaintiff met the A criteria of Listing 12.04, the ALJ found that he met the B criteria because he had marked difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. Tr. 12 ¶ 4. The ALJ also found that plaintiff had only moderate restrictions of daily living and no episodes of decompensation. Tr. 12 ¶ 4. He therefore did not address the alternate C criteria of these listings. Because plaintiff met Listing 12.04, the ALJ found he also met Listing 12.09. Based on plaintiff's meeting these listings, the ALJ determined that with the substance abuse plaintiff was disabled. Tr. 12 ¶ 4. Plaintiff does not challenge these findings.

Because there was medical evidence that plaintiff had drug addiction or alcoholism, the ALJ then evaluated whether such substance abuse was a contributing factor material to the determination of disability, as directed by the Regulations. 20 C.F.R. §§ 404.1535(a), 416.935(a). He revisited the relevant steps of the five-step analysis, evaluating the limitations that would remain if plaintiff stopped using alcohol and cocaine regularly. He found at step two that plaintiff's remaining limitations would be severe. Tr. 13 ¶ 5. At step three, however, he determined that the impairments would not meet or medically equal any listings. Tr. 13 ¶ 6. He also found that the B criteria of Listings 12.04 would no longer be met because plaintiff would have only moderate, rather than marked, difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. Tr. 13 ¶ 6. He also found that plaintiff would have mild, rather than moderate, restrictions in activities of daily living and would continue to have no episodes of decompensation. Tr. 13 ¶ 6. The ALJ further found that the alternate C criteria would not be met. Tr. 14 ¶ 6.

The ALJ next determined that if plaintiff stopped the regular use of alcohol and cocaine, he would have the exertional RFC to do the full range of work at all exertional levels but with

mental limitations. Tr. 14 ¶ 7. Specifically, the ALJ determined that plaintiff would be limited to simple, routine, repetitive tasks ("SRRTs") in a low-stress, low-production job environment with minimal interpersonal demands. Tr. 14 ¶ 7.

Based on this RFC, if plaintiff stopped his regular alcohol and cocaine use, the ALJ found at step four that plaintiff could perform his past relevant work as a trash collector. Tr. 17 ¶ 8. In making this determination, the ALJ relied on the testimony of a vocational expert. Tr. 17 ¶ 8; 54-55. In the alternative, the ALJ found at step five that considering plaintiff's age, education, work experience, and RFC if he stopped his substance abuse, there exist jobs in the national economy that plaintiff could perform, including, as defined in the *Dictionary of Occupational Titles* (http://www.oalj.dol.gov/libdot.htm (last visited 21 Sept. 2012), laborer, stores; cleaner, hospital; and washer. Tr. 18 ¶ 8; 55. The ALJ again relied on the testimony of a vocational expert in making this alternative findings. Tr. 18 ¶ 8. The ALJ accordingly concluded that plaintiff's regular use of alcohol and cocaine is a contributing factor material to the determination of disability and that plaintiff is therefore not under a disability. Tr. 18 ¶ 9.

### D. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.* at 401. Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.    DISCUSSION

### A.    Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because he failed:  to consider the 3 December 2009 Medicaid decision by the North Carolina Department of Health and Human Services ("NCDHHS"); to give proper weight to the opinions of plaintiff's treating physicians[3]; and to find that plaintiff met Listing 12.04 for affective disorders if not abusing substances.  Each of these grounds will be addressed in turn below.

### B.    Nonconsideration of Medicaid Decision

An ALJ is required to consider decisions by other governmental agencies about whether a claimant is disabled, including Medicaid decisions, although such decisions are not binding on the ALJ.  *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6-7 (9 Aug. 2006) ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.").  "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules."  *Id.* at *7.  Failure to discuss a Medicaid decision can require remand.  *Davis v. Astrue*, 7:10–CV–00231–D, 2012 WL 555782, at *5 (E.D.N.C. 5 Jan. 2012) ("In the present case, the ALJ not only failed to explain the consideration given, but completely failed to even acknowledge the NCDHHS decision.  In such cases, this Court has determined that remand is necessary to allow the ALJ to consider the NCDHHS decision and explain its consideration in the ALJ's analysis."), *aff'd and adopted*, 2012 WL 555304 (E.D.N.C. 17 Feb. 2012); *Walton v. Astrue*, No. 7:09–CV–112–D, 2010 WL 2772498, at *1 (E.D.N.C. 9 Jul. 2010) (remanding for further consideration where "the ALJ said

---

[3] In his initial statement of this contention, plaintiff limits it to one of the providers that treated him, Tar Heel Human Services, Inc.  (Pl.'s Mem. 1 ¶ 2).  He subsequently broadens it to include other providers as well.  (*Id.* at 5-7).

nothing [regarding the NCDHHS decision], and SSR–06–3p requires more than 'nothing'");

*Bridgeman v. Astrue*, No. 4:07–CV–81–D, 2008 WL 1803619, at *1, *10 (E.D.N.C. 21 Apr. 2008) (remanding for further explanation where ALJ mentioned Medicaid ruling, but dismissed its relevance without discussion).

Here, however, the ALJ committed no error in not considering the 2009 Medicaid decision because it was not part of the record before him. Although it was issued, on 3 December 2009, over two months before the ALJ hearing, on 9 February 2010, plaintiff never submitted a copy of it for inclusion in the record before the ALJ, as it was his burden to do. *See*, *e.g.*, 20 C.F.R. §§ 404.1512(a) (recognizing burden on claimant to prove disability by furnishing medical and other evidence), 416.912(a) (same); *Pass*, 65 F.3d at 1203 ("The applicant bears the burden of production and proof during the first four steps of the inquiry [*i.e.*, sequential analysis].").  It is clear that plaintiff was aware of the Medicaid decision at the time of the hearing because he referred to it in a "Request for On the Record Reversal" form that he completed, on 2 February 2010, a week before the hearing. *See* Tr. 588 ¶ L. He did not submit the form at or before the ALJ hearing, but did so only after the case reached the Appeals Council. Tr. 1, 4, 5. Notwithstanding that submission, he did not submit a copy of the Medicaid decision itself to the Appeals Council. *See* Tr. 1, 4, 5. Instead, plaintiff submitted it for the first time in this court as an attachment to his brief. Thus, the first ground upon which plaintiff seeks remand is baseless.

Notably, plaintiff does not expressly request remand pursuant to sentence six of 42 U.S.C. § 405(g) ("sentence six"), which provides for remand when evidence is submitted for the first time at the court level. Nevertheless, the court has considered whether such a remand is warranted.  It is not.

Sentence six permits remands "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Edwards v. Astrue*, 7:07CV48, 2008 WL 474128, at *8 (W.D. Va. 20 Feb. 2008). There are accordingly three distinct requirements under sentence six.

First, the evidence must be new. Evidence is deemed new within the meaning of sentence six (as well as the other provisions of 42 U.S.C. § 405) if it is not duplicative or cumulative. *Wilkins v. Sec'y of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Evidence that was available during the administrative hearing but not submitted does not qualify as new evidence. *Wilkins v. Sec'y of Health and Human Servs.*, 925 F.2d 769, 774, *rev'd on other grounds*, 953 F.2d 93 (4th Cir. 1991) (en banc).

Second, the evidence must be material. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *Wilkins*, 953 F.2d at 96.

Third, there must be good cause for failing to submit the evidence earlier. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). This requirement for good cause was added by Congress in 1980. *See* Social Security Disability Amendments of 1980, P.L. 96-265 § 307, 94 Stat. 441 (1980). The courts have recognized that Congress's intent was to permit remands pursuant to sentence six on a very limited basis. *Rogers v. Barnhart*, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002) ("'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.'") (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The burden of showing that the good cause and other requirements of sentence six are met rests with the claimant. *See Fagg v. Chater*, 106 F.3d 390 (Table), 1997 WL 39146, at *2 (4th Cir. 3 Feb. 1997).

Applying the first requirement for sentence six remand here, the court finds that the Medicaid decision is not new because, as discussed, it was in existence and available to plaintiff at the time of the ALJ hearing. The Medicaid decision is not material because there is not a reasonable possibility that it would have changed the outcome in this case.[4] Among other reasons, the decision does not identify the evidence upon which it is based or provide any explanation at all of the reasoning behind it. There is no express indication of the extent to which, if any, plaintiff's substance abuse was taken into consideration. Thus, the Medicaid decision does not provide insight into plaintiff's impairments or show the degree of disability determined by the NCDHHS based on its rules. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *7.[5]

Lastly, plaintiff has not shown good cause for his failure to submit the Medicaid decision in the proceedings before the ALJ. In fact, he offers no explanation at all.

Thus, while failure to meet any one requirement for remand under sentence six would preclude remand, plaintiff does not meet any of the requirements. This case, therefore, will not be remanded pursuant to sentence six.

## C.   Assessment of Treating Physicians' Opinions

Plaintiff contends that the ALJ "did not give proper weight to the claimant's treating physicians." (Pl.'s Mem. 5). He then presents a summary of seven sets of medical records, presumably those he believes the ALJ wrongly evaluated. (*Id.* at 5-6). He concludes with a

---

[4] The court recognizes that when a decision by another governmental agency does comes before the ALJ, he must consider it whether or not it appears to be material and remand is required if he does not. *See*, *e.g.*, *Davis*, 2012 WL 555782, at *5; *Walton*, 2010 WL 2772498, at *1. These authorities are not apposite here, though, because the Medicaid decision did not come before the ALJ. In any event, the materiality requirement is not dispositive of sentence six remand in this case because the other requirements for it are also not satisfied.

[5] The fact that the Medicaid decision is not new or material would preclude remand even if it were deemed to have been before the Appeals Council as a result of plaintiff's disclosure of its issuance to the Appeals Council. *See Wilkins*, 925 F.2d at 774; *Felts*, 2012 WL 1836280, at *1.

discussion of the ALJ's obligation to give a treating physician's opinion "great weight," as set out in *DeLoatche*, 715 F.2d at 150 n.1, and the substantial evidence review standard. (Pl.'s Mem. at 6-7). The court finds that no error in the weight the ALJ accorded the records plaintiff cites.

The principles regarding the evaluation of medical source evidence are well established. The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)[6]; *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

---

[6] Citation is to the version of the regulation in effect at the time the ALJ issued his decision, 15 April 2010.

the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

Similarly, the opinions of physicians and psychologists who examine a claimant are generally entitled to more weight than those of physicians and psychologists who did not perform an examination. *See* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(d)(1), (2); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2. The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. §§ 404.1527(f), 416.927(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. *Id.* Significantly, unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. *Id.* §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2. The same factors used to evaluate the opinions of physicians and psychologists can appropriately be used to evaluate the opinions of medical sources other than physicians and psychologists (and others qualifying as "acceptable medical sources" under the Regulations). *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *4-5. Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996).

Turning now to the records cited by plaintiff, the 2 June 2010 statement by Goshen Medical Center regarding the side effects of medication does not appear to be included in the

record. It postdates the ALJ's decision, was not submitted to the Appeals Council (*see* Tr. 1, 4, 5), and was not submitted to the court.

The earliest set of records actually in the case cited by plaintiff relates to his stay at Duplin General Hospital from 9 to 12 April 2005. Tr. 431-41. The ALJ summarized these records in his decision. Tr. 12-13 ¶ 4. Because plaintiff does not allege onset of his disability until 4 June 2007, over two years after this hospital stay, these records are of limited relevance.

In any event, these records are consistent with the ALJ's finding, not challenged by plaintiff, that through 2007 plaintiff was disabled due to depression, bipolar disorder, and substance abuse disorder. *See* Tr. 12 ¶ 4. The physician who completed the discharge summary, Michael K. Nunn, D.O., diagnosed plaintiff with bipolar disorder, depressed type; marijuana abuse in remission due to containment; and alcohol withdrawal in remission. Tr. 431. He assessed his prognosis as poor without treatment. Tr. 432. The diagnosis on admission, also made by Dr. Nunn, was similar: bipolar disorder, depressed type; alcohol and marijuana abuse; and alcohol withdrawal. *See* Tr. 434.

The next set of records relates to a stay by plaintiff at Duplin General Hospital from 16 to 23 May 2007. Tr. 416-25. These records also predate the alleged onset of plaintiff's disability, but not sufficiently to attenuate significantly their relevance. The ALJ discussed these records in his decision. Tr. 12-13 ¶ 4.

The records state that he was involuntarily committed to the hospital based on the risk of suicide. Tr. 424. The admitting diagnosis, made again by Dr. Nunn, was major depression and alcohol dependence. Tr. 423. The discharge diagnosis was the same except that the alcohol dependence was described at that time as in remission. Tr. 416. These records, including the findings in them, do not conflict with, but tend to support, the ALJ's uncontested determination

that plaintiff's substance abuse and other mental impairments rendered him disabled through 2007.

The next set of records is an intake evaluation form dated 23 May 2007 from Tar Heel Human Services, Inc. to which Dr. Nunn referred plaintiff. Tr. 416, 466-71. These records, like the previous records, also predate by a short period the alleged onset of plaintiff's disability. The ALJ discussed these records as well. Tr. 15 ¶ 7.

The diagnosis determined by plaintiff's examiner, a licensed clinical social worker, was bipolar disorder and alcohol dependence. Tr. 470. Again, this diagnosis along with the related findings, are supportive of the ALJ's determination that plaintiff was disabled through 2007 due to substance abuse and other mental impairments.

The subsequent record is a psychiatric evaluation by psychiatrist Ash Mikhail, M.D.[7] of Coastal Carolina Neuropsychiatric Center dated 22 June 2007,[8] about one month after plaintiff's discharge from Duplin General Hospital. The ALJ discussed this evaluation in his decision. Tr. 15 ¶ 7.

Dr. Mikhail diagnosed plaintiff with bipolar disorder and ethanol dependence, in early full remission. Tr. 461. However, as the ALJ noted, the evaluation also states that plaintiff continued to use THC (*i.e.*, marijuana). *Id.* Again, this diagnosis and the related findings are consistent with the ALJ's finding that plaintiff was disabled through 2007 as a result of his substance abuse and other mental impairments.

The next record is an admission assessment for plaintiff, dated 4 May 2009, apparently from Tar Heel Human Services, Inc. Tr. 537-45. While this record states a diagnosis of bipolar

---

[7] The evaluation was also signed by a licensed professional counselor.

[8] This is the date appearing on the first page of the report. The signature of Dr. Mikhail is dated one day earlier, 21 June 2007. Tr. 461.

disorder and sets out related findings, it is unsigned. Tr. 542-44. Thus, the medical source who made the assessment, a key consideration in evaluating it, cannot be determined. Moreover, the section on substance abuse history is marked "Not Applicable" and no information is provided regarding plaintiff's extensive history of substance abuse. Tr. 539-41. This history is documented by, among other considerable evidence, plaintiff's statement to Dr. Mikhail, noted by the ALJ, that he had engaged in alcohol abuse for 20 years. Tr. 13 ¶ 4; 460. Accordingly, this record could not appropriately be accorded significant weight. Given its lack of materiality, the fact that the ALJ did not discuss it is certainly not error. In any event, plaintiff has not demonstrated that it conflicts with the RFC the ALJ found plaintiff to have when not regularly using alcohol or cocaine, or any other findings by the ALJ.

The final record plaintiff cites is a letter dated 3 August 2009[9] by licensed psychological associate Michael B. Jones, M.A., LPA-HSP of Tar Heel Human Services, Inc. addressed to "Disability Determination." Tr. 574. The ALJ discussed this letter in his decision. Tr. 15-16 ¶ 7. The letter explains that plaintiff has been compliant with treatment for a pervasive history of bipolar disorder and concludes that "[t]he prognosis of his diagnosis is maintenance and manageability versus truly overcoming his condition." Tr. 574. This record, too, does not conflict with the RFC determination by the ALJ.

Although plaintiff characterizes the records he cites as those of his treating physicians, at most only one of those providing treatment is a treating source within the meaning of the Regulations. Treating sources are defined to include only physicians and psychologists (along with certain other professionals not relevant here), who have an ongoing treatment relationship with the claimant. *See* 20 C.F.R. §§ 404.1502 ("Treating source" def.; "Acceptable medical source" def.), 416.902 (same). Only opinions by treating sources can be given controlling

---

[9] Plaintiff gives the date as 1 June 2010. (Pl.'s Mem. at 5).

weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2.

Among the records plaintiff cites, the only ones by physicians are the 2005 and 2007 Duplin General Hospital records by Dr. Nunn and the June 2007 psychiatric evaluation by Dr. Mikhail. There are none by psychologists. Dr. Nunn has not been shown to have an ongoing treatment relationship with plaintiff. He saw plaintiff on only two occasions separated by over two years. As to Dr. Mikhail, the only record in the case file clearly attributable to him (because his typed name appears below his signature) is the one cited by plaintiff. There are other records from Coastal Carolina Neuropsychiatric Center (Tr. 500-09),[10] and although the signatures on some of them resemble Dr. Mikhail's, none state his name expressly. In any event, all the records from Coastal Carolina Neuropsychiatric Center are from 2007, and plaintiff does not challenge the ALJ's finding that he was disabled during that period due to his substance abuse and other mental impairments. Because none of the records have been shown convincingly to be by treating sources, none of the opinions expressed in them are entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2. Even so, there is not a reasonable possibility that the outcome would change if any such opinions were given controlling weight.

In any event, the court finds that the ALJ made sufficiently clear the weight he accorded the records plaintiff cites and such weight was legally proper. After careful consideration of the entire record in this case, the court also finds no legal error in the ALJ's evaluation of the other medical evidence. The court accordingly rejects plaintiff's second challenge to the ALJ's decision.

---

[10] Duplicate copies of a portion of these records appear at Tr. 453-58.

**D.    Determination that Listing 12.04 Is Not Met in Absence of Substance Abuse**

As indicated, the ALJ found that when abstaining from regular use of alcohol or cocaine, plaintiff would not meet Listing 12.04, in part, because he would no longer have any marked limitations in the first three functional areas in the B criteria.  Tr. 13 ¶ 5.  Plaintiff disagrees and contends that plaintiff would still meet Listing 12.04 when not regularly using alcohol or cocaine because he would continue to have marked difficulties in two areas:    maintaining social functioning and maintaining concentration, persistence, or pace.  The court finds no error by the ALJ.

Plaintiff relies for his contention on the medical records previously reviewed.   As discussed, only two of these records—the unsigned admission assessment dated 4 May 2009 and Mr. Jones' letter dated 3 August 2009—relate specifically to the period after 2007, when plaintiff's impairments were found not to be disabling.  The unsigned statement is unreliable for the reasons previously discussed.   Mr. Jones' letter contains no information supporting a determination that plaintiff would have marked limitations in maintaining social functioning or maintaining concentration, persistence, or pace when not regularly using alcohol or cocaine.

Substantial evidence supports the ALJ's determination that when abstaining from regular alcohol and cocaine use plaintiff's limitations in these areas would be only moderate.  This evidence includes the determination by state agency consulting physician Giuliana Gage, M.D. on 28 January 2008 in a Psychiatric Review Technique form (Tr. 529) and a Mental RFC Assessment form (Tr. 533-34) that plaintiff had no more than moderate limitations in the areas of social functioning and concentration, persistence, or pace.  The ALJ adopted these opinions in full.  Tr. 17 ¶ 7.  Additional support in the record includes, as the ALJ noted:  the apparent effectiveness of medication in treating plaintiff's bipolar disorder and depression; the absence of

documented treatment of plaintiff for his bipolar disorder and depression between January 2008 and 2009; and the absence of any opinions from treating or examining physicians that plaintiff is disabled or has limitations greater than those included in the RFC determination—namely, performance of SRRTs in a low-stress, low-production job environment with minimal interpersonal demands.  Tr. 14 ¶ 7; 16 ¶ 7.

The court concludes that the ALJ's determination that plaintiff would not meet Listing 12.04 when abstaining from regular alcohol or cocaine use is legally proper.  The court accordingly rejects plaintiff's challenge to it.

III.  **CONCLUSION**

For the foregoing reasons, the court concludes that the ALJ's decision is based on the proper legal standards and supported by substantial evidence.  IT IS ORDERED that the Commissioner's motion for judgment on the pleadings (D.E. 41) is ALLOWED, plaintiff's motion for judgment on the pleadings (D.E. 35) is DENIED, and the final decision of the Commissioner is AFFIRMED.

This, the 21st day of September 2012.

James E. Gates
United States Magistrate Judge